# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ANNJEANETTE B.,[1]

                                                      Plaintiff,

          v.                                                      3:22-CV-198
                                                                  (ATB)

KILOLO KIJAKAZI,

                                                      Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
MOLLY CARTER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.  PROCEDURAL HISTORY

On August 28, 2020, plaintiff protectively filed an application for disability insurance benefits ("DIB"), alleging that she became disabled on March 20, 2020. (Administrative Transcript ("T.") 208-14, 237).  Her application was denied initially in November 2020, and upon reconsideration in February 2021. (T.84, 100, 101-04, 119-

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

26).  Plaintiff requested a hearing, which was held by telephone conference on July 12, 2021 before Administrative Law Judge ("ALJ") Kenneth Theurer.  (T. 39-69).  Plaintiff and Vocational Expert ("VE") Patricia Highcove testified at the hearing. (*Id*.).  ALJ Theurer issued an unfavorable decision on July 26, 2021, which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 28, 2022.  (T. 1-6, 18-34).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers

such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was born on May 21, 1990, making her 31 years old as of the date of her administrative hearing. She did not have a driver license. (T. 60). Plaintiff completed her education up to and including the tenth grade, and although she tried to earn a GED, it was difficult for her to stay focused outside of the classroom setting. (T. 45). She lived in a house with her wife and dog. (T. 45, 56).

Plaintiff's relevant employment history included both part-time and full-time work at Wendy's and Dunkin Donuts, as well as part-time work in housecleaning. (T. 46-51). She stopped working in March 2020, because her doctor did not want her to return to work with heavy lifting. (T. 51-52). She was also receiving infusion treatment for her Crohn's disease at the time. Due to the COVID-19 pandemic and her "endangered" immune system, she was not strong enough to return to work. (T. 52).

Plaintiff testified that she could not return to work because of her low back and right knee pain, as well as the effects of her Crohn's disease. (T. 52-53, 58-59). She also suffered from asthma, but the condition was not "full-blown." (T. 55). Plaintiff did not feel that she could work a "computer" or "desk" job, because she was always more "hands-on" and did not believe she had the reading comprehension skills to perform such work. (T. 57). She also cited her bathroom trips as interfering with her ability to be on task at work. (T. 57-58). She testified that during a typical eight-hour shift of work, she was in the bathroom for three to four hours. (T. 59-60).

As treatment for her conditions, plaintiff received infusions every eight weeks for her Crohn's disease. (T. 54). She also took a THC capsule for her back and knee pain. (T. 55). In addition, she took "bipolar medicine" and attended therapy. (T. 54-55). Plaintiff spent her days at home "sometimes" doing laundry, cleaning, sleeping, and watching television. (T. 56). Using the bathroom was, "a lot of times . . . half [her] day." (T. 56). She could no longer walk her dog because she lived on a hill that was "difficult" to walk down and up. (T. 56). Plaintiff's wife worked full-time, and took care of the shopping, cleaning, household upkeep, groceries and cooking. (T. 60-61). Her wife, and a caseworker from Catholic Charities, assisted plaintiff in getting to medical appointments. (T. 61).

## IV.  **THE ALJ'S DECISION**

At step one of the sequential evaluation, the ALJ found that plaintiff had not engaged in substantial gainful employment since her alleged onset date of March 20, 2020. (T. 20). At step two, the ALJ found that plaintiff had the following severe impairments: asthma, inflammatory bowel disease, and morbid obesity. (T. 21). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically

equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 23).

At step four, the ALJ found that plaintiff had the RFC to perform light work, except she could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, sit for up to six hours, and stand or walk for approximately six hours in an eight hour day with normal breaks.  (T. 24).  The ALJ further found that plaintiff could occasionally climb ramps, stairs, ladders, ropes or scaffolds, as well as perform occasional balancing, stooping, kneeling, crouching, and crawling.  (*Id.*).  Last, the ALJ found that plaintiff should avoid concentrated exposure to smoke, dust, and respiratory irritants.  (*Id.*).

The ALJ next determined that plaintiff "may be able to perform past relevant work, but a finding is not material" because the applicable Medical-Vocational Guidelines would direct a finding of "not disabled," given the plaintiff's RFC.  (T. 32). Ultimately, based on the VE's testimony and considering the plaintiff's age, education, prior work experience and RFC, the ALJ found that plaintiff could perform jobs which existed in significant numbers in the national economy. (T. 33-34).  Thus, the ALJ found that plaintiff was not disabled for purposes of Social Security.  (*Id.*).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's decision is not supported by substantial evidence:

1.     The ALJ failed to account for any time off-task and/or absenteeism, despite undisputed medical opinion evidence suggesting work-preclusive limitations as to these issues.  (Plaintiff's Brief ("Pl.'s Br.") at 9-17) (Dkt. No. 9).

2.      The ALJ improperly assessed the medical opinions. (Pl's Br. at 17-22).

3.      The ALJ failed to properly account for plaintiff's subjective symptoms and other relevant factors.  (Pl.'s Br. at 22-23).

4.      The ALJ erred in finding that plaintiff could perform her past work, or that there is other work in the national economy she can perform.  (Pl.'s Br. at 23-24).

Defendant argues that the ALJ properly evaluated the evidence of record, and that the Commissioner's decision is supported by substantial evidence. (Def.'s Br. at 3-25) (Dkt. No. 10).[2]  For the following reasons, this court agrees with the plaintiff that the ALJ failed to sufficiently evaluate the medical opinions of record, and as a result the ALJ's step three and step four determinations, and his ultimate finding that plaintiff was not disabled, were tainted. Therefore, this court orders a remand for further administrative proceedings to properly evaluate the persuasiveness of the medical opinion evidence, develop the record as is determined necessary, and reach an RFC determination that is supported by substantial evidence.

## DISCUSSION

## VI.   RFC/EVALUATING MEDICAL EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

---

[2] Plaintiff filed a reply brief (Dkt. No. 13), and defendant a sur-reply brief (Dkt. No. 16).

activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.     Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating

source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 3.    **Evaluation of Subjective Symptoms**

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*,

606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[3]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"

_____

[3] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

*Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. §

404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[4]

If the objective medical evidence does not substantiate the claimant's symptoms,

the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d

Cir. 2013).  The ALJ must assess the claimant's subjective complaints by considering

the record in light of the following symptom-related factors: (1) claimant's daily

activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3)

precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of

any medication taken to relieve symptoms; (5) other treatment received to relieve

symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any

other factors concerning claimant's functional limitations and restrictions due to

symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**B.    Analysis**

Plaintiff argues that the ALJ improperly rejected "undisputed" medical evidence

establishing that plaintiff's restrictive limitations as to time off-task and absenteeism

significantly eroded her ability to perform full-time work.  (Pl.'s Br. at 11).

Specifically, plaintiff points out that there are "only three" medical opinions that

address the extent to which plaintiff would be off-task and/or absent on account of her

impairments – that of her primary care physician, Gary Dean, M.D.; her pain

---

[4]  The court in Barry also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

management specialist, Anne Calkins, M.D.; and her gastroenterologist, Jung Oh, M.D. Each of these treating sources opined that plaintiff's impairments would cause her to be off-task for more than 33% of the workday, and absent from work for more than four days per month.  (T. 8-9, 478-79, 677-78, 689-90).

Plaintiff further maintains that the ALJ erred in rejecting the opinions of Dr. Dean and Dr. Calkins,[5] because there is "no medical opinion stating that plaintiff would not be off-task or would not be absent on account of her impairments" . . . and that there is "no other medical opinion that even considers the need for bathroom breaks, time off-task, and/or attendance." (Pl.'s Br. at 11).  Plaintiff specifically argues that the opinions of non-examining state agency medical consultants do not constitute contrary medical opinions as to the issue of time off-task and absenteeism, and that these opinions do not present an adequate basis on which an ALJ can reject the specific, restrictive opinions of a plaintiff's treating providers.  Thus in this case, plaintiff argues, the opinions of state agency medical consultants S. Padmaraju, M.D. and A. Vinluan, M.D., who opined that plaintiff could perform modified light work, did not provide a basis for plaintiff to reject Dr. Dean and Dr. Calkins's conclusions.

As plaintiff's counsel points out, this court has previously addressed the scope of a state-agency medical consultant's opinion, relative to time off-task and absenteeism.

_____

[5] Dr. Oh's opinion was submitted to the Appeals Council as new evidence upon plaintiff's request for review of ALJ Theurer's decision.  (T. 7-11).

13

*See Lisa C. v. Kijakazi*, No. 3:21-CV-0037 (ATB), 2022 WL 2105853, at *7 (N.D.N.Y. June 10, 2022) (explaining "one may infer" from a state agency medical consultant's RFC assessment that plaintiff could "perform work on a sustained basis and meet a schedule" and that any "time off-task relative to bathroom breaks would not preclude [plaintiff] from performing unskilled work at an exertional level"); *Cassandra A. v. Kijakazi*, No., 3:21-CV-007 (ATB), 2022 WL 1597680, at *7 (N.D.N.Y. May 19, 2022) (same); *Jennifer Lynn J. v. Kijakazi*, No. 3:20-CV-1294 (ATB), 2022 WL 912981, at *10 (N.D.N.Y. Mar. 29, 2022) (same); *see also Ana C.-M. v. Kijakasi*, No. 3:20-CV-296 (DEP), 2021 U.S. Dist. Lexis 138352 at *18 (N.D.N.Y. July 23, 2021) (noting that the POMS allow the court to "infer that those state agency consultants concluded plaintiff is able to perform on a sustained basis and meet a schedule."). As the court has consistently reasoned, state agency medical consultants are instructed to assess the plaintiff's work-related functions "on a sustained basis," which includes the ability to work an eight-hour day for a five-day week. (Program Operations Manual System ("POMS") §§ DI 24510.001A.3.a, DI 24510.004C.2.b, DI 24510.050; see also POMS DI § 24510.006 (directing state agency physicians to follow Social Security Ruling ("SSR") 96-8p); 1996 WL 274184, at *1 (July 2, 1996)1996 WL 274184, at *1 (July 2, 1996) (defining work on a regular and continuing basis as eight hours per day, five days per week)). Thus, one may infer from opinions such as those of Dr. Padmaraju and Dr.

Vinluan for modified light work, their implied conclusion that plaintiff is able to perform such work on a sustained basis and meet a schedule.

Plaintiff attempts to persuade the court that such an inference is misplaced. However, she has failed to present any caselaw directly contradicting the court's prior reasoning, much less calling into question the scope of a state agency medical consultant's opinion and the Second Circuit's clear holding that an ALJ is "not required to identify evidence explicitly rebutting the opinions of [treating providers] before discounting or rejecting them." *Smith v. Berryhill*, 740 F. App'x 721, 725-26 (2d Cir. 2018); *see also Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("The ALJ is permitted to discount the opinion of a treating physician if it is inconsistent with other substantial evidence. And the ALJ bears the final responsibility for making RFC determinations. It follows from these basic principles that the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.") (internal citations and quotation marks omitted).

Plaintiff does argue that the Second Circuit's recent decision in *Colgan v. Kijakazi*, 22 F.4th 353 (2d Cir. 2022), compels this court to reject its prior holdings. Colgan's principal argument on appeal was that the ALJ misapplied the treating physician rule - a regulation that is not applicable to the instant case - by assigning "little weight" to the medical opinion of plaintiff's treating specialist, Dr. Ward, who among other things opined that plaintiff would be off-task more than 33% of the day,

and absent more than four days each month.  *Colgan*, 22 F. 4th at 360.  The court

concluded that, on the *Colgan* record, the ALJ erred in failing to assign Dr. Ward's

expert opinion controlling weight pursuant to the applicable regulations.  Specifically,

the court took issue with the various bases on which the ALJ discounted Dr. Ward's

opinion, including the fact that it was presented in check-box form, the ALJ's

explanation as to why Dr. Ward's opinion was "internally inconsistent" and

"unsupported by other substantial evidence," and that Dr. Ward's opinion was entitled

to little weight based on the other expert opinions.  *Colgan*, 22 F. 4th at 360-64.

Ultimately, the court found that there was no substantial evidence in the record that

raised a genuine conflict with Dr. Ward's medical opinion - in particular, there was no

report "address[ing] or disput[ing] the crux of Dr. Ward's medical opinion: that Colgan

suffered from debilitating headaches which would require her to be off-task more than

33% of the day and absent more than four days each month."  *Colgan*, 22 F.4th at 364.

For several reasons, plaintiff's reliance on *Colgan* as the basis for remand in this

case is misplaced.  To begin, the Second Circuit's analysis was premised on the

deference owed to a treating physician's opinion pursuant to the regulations in place at

the time plaintiff's application was filed. Accordingly, the Court analyzed that case by

determining whether the substantial evidence of record was "sufficient to undermine"

Dr. Ward's medical opinion.  *Id.* Under the new regulations, an ALJ is not under the

same obligation to afford controlling weight to a treating physician in the absence of

compelling reasons otherwise.  Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the factors enumerated in the regulations.

Furthermore, there is nothing in the *Colgan* opinion to support the plaintiff's premise that, as a general rule, an ALJ is required to rebut a treating source's restrictive limitations for off-task behavior, or in this case expanded access to the restroom, with a contrary medical opinion speaking to the identical functionalities.  Rather, it is well settled that the ALJ may reject a medical opinion where he or she has "deemed aspects of the . . . opinion[] critically flawed and found that the opinion[] [was] inconsistent with other substantial evidence."  *Smith v. Berryhill*, 2018 WL 3202766, at *4 Accordingly, this court rejects plaintiff's general argument that, under the new regulations, an ALJ may never rely on the opinions of the state agency medical examiners - who do not explicitly opine as to time off-task and absenteeism - over those of treating sources - who do - merely because the former does not include a more specific, contrary medical opinion.

Notwithstanding the above analysis, it remains incumbent upon an ALJ to adequately explain *how* he or she considers the medical opinions of record in reaching an RFC determination.  Of particular relevance in this case is the ALJ's explanation for concluding that plaintiff did not experience any limitations for time off-task and or absenteeism, despite the restrictive opinions from Dr. Dean and Dr. Calkins, which were later endorsed by Dr. Oh. "In all cases the ALJ is required to provide rationale in

the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings." *Pamela P. v. Saul*, No. 3:19-CV-575, 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020). "Although under the new regulations the ALJ is not required to give specific evidentiary weight to a particular medical opinion, he is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors." *Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 8-9 (W.D.N.Y. 2022). "Both supportability and consistency in part require comparison of the medical opinions with other medical sources." *Mark K. v. Comm'r of Soc. Sec.,* No. 20-CV-833, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). A conclusory analysis of these factors "precludes the Court from undertaking meaningful review" of the ALJ's decision. *Jaleesa H. v. Comm'r of Soc. Sec.*, 2022 WL 174337, at *6; *see also William B. J. v. Comm'r of Soc. Sec.*, No. 6:20-CV-989, 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022). Indeed, "[c]ourts in this Circuit have remanded when the ALJ failed to address either supportability or consistency." *William B. J. v. Comm'r of Soc. Sec.*, 2022 WL 344059, at *5.

In this case, the court agrees that the ALJ's assessments of plaintiff's treating sources' medical opinions are largely deficient. Take, for example, the opinions provided by plaintiff's primary care provider, Dr. Dean. After outlining the limitations opined by Dr. Dean, including plaintiff's inability to meet attendance and endurance

requirements for full-time work, the ALJ merely stated that the opinion was "less

persuasive because it is not consistent with the objective clinical evidence that is

reported in his medical records as well as the treatment records from Dr. Oh and Dr.

Calkins." (T. 31). In support of this conclusion the ALJ cited, generally, to the entirety

of plaintiff's treatment records. (*Id.*). The ALJ then concluded that Dr. Dean's

"estimates of the amount of time [plaintiff] would be off-task and absent are purely

speculative." (*Id.*).

The ALJ's consideration of Dr. Calkins's opinion is equally superficial. After

identifying the work-preclusive limitations posed by plaintiff's pain management

specialist, the ALJ issued essentially the same "explanation" for finding Dr. Calkins's

opinions "less persuasive,"

> …because they are not consistent with the objective clinical evidence
> that is reported in her medical records or the treatment records from
> Dr. Oh and Dr. Dean. . . . Moreover, the estimates of the amount of
> time [plaintiff] would be off-task and absent are purely speculative.

(*Id.*).

The ALJ's consideration of these two opinions failed to sufficiently address how

he considered the "supportability" and "consistency" factors. "The supportability factor

measures whether the medical opinion is supported by objective medical evidence and

accompanying explanations." *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085

(TWD), 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021). Here, the ALJ makes no

specific reference to the supportability of Dr. Dean and Dr. Calkins's opinions, or to the

19

explanations provided by these sources in conjunction with their opined limitations. The ALJ merely concludes that Dr. Dean and Dr. Calkins's opinions regarding time off-task and absenteeism are "purely speculative," without further explanation.  However, the ALJ appears to ignore Dr. Dean's written explanation for his opinion, attributing the amount of time plaintiff would be off-task and absent to plaintiff's limited mobility and concentration from her chronic back pain; her pain and frequent bathroom trips due to Crohn's Disease; her shortness of breath and coughing due to asthma; and her difficulty concentrating and staying on task due to her bipolar disorder.  (T. 479).  Likewise, Dr. Calkins cited to plaintiff's symptoms stemming from Crohn's disease, chronic knee and back pain, and bipolar disorder as support for her restrictive opinion concerning time off-task and absenteeism.  (T. 678).  Thus, while the ALJ may have disagreed with the extent to which these treating providers found plaintiff to be limited by her conditions, the lack of discussion as to why the ALJ reached such a conclusion precludes meaningful review by this court.

"Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Rua-Campusano v. Kijakazi*, No. 20 Civ. 7087, 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021), *report and recommendation adopted*, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022) (internal quotation omitted).  In this case, the ALJ states his general conclusion that Dr. Dean and Dr. Calkins's opinions are inconsistent with the medical records, but offers no

20

explanation as to how that is true. The ALJ did not identify any specific inconsistencies, but merely cites to the medical record as a whole.  *See William B. J. v. Comm'r of Soc. Sec.*, 2022 WL 344059, at *5 (noting the lack of actual comparison of the medical opinions in the record); *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *10 (N.D.N.Y. Feb. 22, 2021).

Defendants contend that the ALJ's overall discussion of the medical records and various opinions, when read as a whole, satisfy his regulatory obligation in evaluating the supportability and consistency of Dr. Dean and Dr. Calkins.  Although the court agrees that it is proper to read the ALJ's decision as a whole, "it is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision. Rather, the ALJ is explicitly required to 'explain how [they] considered the supportability and consistency factors for a medical source's medical opinions.' " *Kathleen A. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-1034(LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)) (emphasis omitted).  In this case, although the ALJ provided a summary of some of plaintiff's medical records in a different section of his decision (T. 26-28), it did not adequately consider the supportability and consistency factors relative to Dr. Dean and Dr. Calkins's opinions.

The ALJ's failure to explain how he considered the supportability and consistency of these medical opinions was procedural error.  Nevertheless, the ALJ's decision could still be affirmed if " 'a searching review of the record' assures us 'that

21

the substance of the [regulation] was not traversed.' " *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citations omitted).  Here, however, the court cannot conclude that the ALJ's procedural error was harmless, insofar as the court cannot "adequately 'glean' how the ALJ weighed the consistency and supportability factors" for Dr. Dean and Dr. Calkins's opinions.  *Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

With respect to supportability, as the court previously pointed out it is unclear why the ALJ found Dr. Dean and Dr. Calkins's opinions to be "speculative" and unsupported by the specific explanations contained in their consistent medical opinions, without any discussion.  *See Elizabeth P. v. Comm'r of Soc. Sec*., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *10 (N.D.N.Y. Feb. 18, 2022) ("Without discussing whether Dr. Kahn's 'objective medical evidence and [ ] explanations' . . .  supported his opinion, the Court disagrees that the ALJ's failure to discuss supportability is harmless error.") (quoting 20 C.F.R. § 404.1520c(c)(1)); *compare with Sandra D. v. Comm'r of Soc. Sec.,* No. 5:20-CV-1067 (LEK/ATB), 2022 WL 344058, at *2, 6 n.1 (N.D.N.Y. Feb. 4, 2022) (finding no error in the ALJ's conclusion that a time off task limitation "was speculative and not supported by any objective evidence[ ]" because it was "the only opinion to specifically address off-task time" and "the record does address the issue, but conspicuously lacks any mention of the necessity of greater limitation[.]").

22

Moreover, the court cannot conclude that Dr. Dean and Dr. Calkins's restrictive opinions as to time off-task and absenteeism, as later substantiated by Dr. Oh's opinion, were inconsistent with the record as a whole.  Plaintiff testified that she needed to be in proximity to a bathroom during the workday, and that the length and frequency of her required bathroom breaks at her last employment interfered with her ability to do her job.  (T. 57-60).  She specified that she spent three to four hours out of an eight-hour shift in the bathroom.  (T. 59-60).  The ALJ acknowledged that plaintiff's inflammatory bowel disease was a severe impairment, and recognized MRI studies confirming her "acute on chronic inflammation."  (T. 21, 27).

The ALJ also included a summary of plaintiff's treatment for Crohn's disease in his opinion.  (T. 27-28).  However, to the extent the ALJ's summary might have constituted a "discussion" of the supportability and consistency factors pertaining to the medical opinions of record, it improperly characterized the success of plaintiff's treatment, and ignored other evidence to the contrary.  Specifically, the ALJ cited to plaintiff's March 26, 2021 visit with Dr. Oh, noting that she completed two doses of Entyvio in February and March 2021, and her examination was "within normal findings," including active bowel sounds, that she was "alert and oriented x3," and that she was "in excellent spirits and her abdominal pain was well controlled at that time." (T. 28).  The ALJ did acknowledge that it was unclear to Dr. Oh whether the improvement was from mood medication adjustments, or if it was reflective of the

improvement that was appreciated in plaintiff's February 2021 MRI. (T. 28). Nevertheless, the ALJ concluded from this March 26th record that, with treatment, claimant was doing well, with no abdominal pain, was eating well, and was in a good place mentally.  (T. 28).

As the plaintiff points out, the ALJ entirely failed to address Dr. Oh's subsequent findings at plaintiff's June 3, 2021 follow up appointment.[6]  At that time, Dr. Oh noted that plaintiff's abdominal pain had returned prior to her next Entyvio infusion, and that plaintiff was "struggling with bowel movement . . . having issues passing stool . . . [and] having diarrhea when she does."  (T. 797).  Dr. Oh cited plaintiff's "aggressive usage" of MiraLAX.  (*Id.*).  Most notably, Dr. Oh noted that "Entyvio has not made [plaintiff's] symptoms improve."  (*Id.*).  Instead, the ALJ cited to Dr. Calkins's June 7, 2021 record, at which she noted plaintiff's remark that her "Crohn's GI symptoms are stable[.]"  (*Id.*).  The ALJ's failure to include Dr. Oh's June 3, 2021 treatment note in his discussion of plaintiff's longitudinal treatment history suggests that he impermissibly relied on a "cherry-picked" selection of excerpts from the record in evaluating the medical evidence of record.  This was improper.  *See, e.g., Nix v. Astrue*, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ cannot pick and choose only parts of a medical opinion that support his

---

[6] The ALJ issued his decision on July 26, 2021, and plaintiff's June 2021 medical records from Dr. Oh were included in the record before him on review.  (T. 797).

determination," and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the [claimant]'s claims.") (citing *Lopez v. Sec'y of Dept. of Health and Human Servs*., 728 F.2d 148, 150–51 (2d Cir. 1984)).

Otherwise, the ALJ included one paragraph in support of his determination that plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were inconsistent with the documented medical evidence.  (T. 29).  The ALJ relied on Dr. Oh's March 26, 2021 treatment record, as well as Dr. Calkins June 7, 2021 treatment record, in concluding that plaintiff's subjective complaints were inconsistent with the medical evidence.  (*Id.*).  He did not, however, reference plaintiff's June 3, 2021 treatment record, or Dr. Oh's remarks that plaintiff's treatment was not improving her symptoms.  (*Id.*).  The ALJ's limited discussion of only the evidence tending to show that plaintiff did not suffer from limitations stemming from the combination of her impairments did not satisfy his obligations under the applicable regulations, and the court cannot accept the Commissioner's post hoc rationalizations where, as here, the ALJ ignored the evidence of record supporting plaintiff's claims of disability. *See Elder v. Comm'r of Soc. Sec.*, No. 15-CV-7370, 2017 WL 1247923, at *12 (E.D.N.Y. Mar. 24, 2017) ("The Court cannot consider the Commissioner's post-hoc justifications that

were not addressed by the ALJ as a basis to affirm the ALJ's decision."); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 333 (E.D.N.Y. 2016) ("Such post hoc rationalizations are insufficient, as a matter of law, to bolster the ALJ's decision."); *see also Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court may not accept appellate counsel's post hoc rationalization for agency action.") (citations and internal quotation marks omitted).

The Commissioner asks the court to look to its own recent decisions "upholding the rejection of extreme opinion evidence (such as off-task behavior and work absences) where the record showed an individual's Crohn's disease improved with treatment and contained a reliable contrary medical opinion." (Def.'s Br. at 13). As discussed above, however, it is unclear to what extent plaintiff's condition in this case actually improved with treatment. Despite plaintiff's February 10, 2021 MRI indicating that "findings appear improved compared to the November 2020" imaging, Dr. Oh noted in June 2021 that the prescribed treatment was not improving plaintiff's symptoms. (T. 797). In August 2021, Dr. Oh described plaintiff's condition as "severely active Crohn's disease," and indicated that plaintiff would be "pursuing surgery followed by more treatment for Crohn's disease to stabilize her condition." (T. 10-11).

Moreover, the cases cited by the Commissioner are inapposite. For example, in *Lisa C. v. Kijakazi*, this court upheld the Commissioner's RFC where the ALJ explicitly

"considered and accommodated plaintiff's reported Crohn's disease symptoms of abdominal pain, stress, fatigue, and diarrhea by restricting her to performing sedentary work in a low stress job, with postural limitations, a restriction on hazards, and 'an expanded allowance to use the restroom.'" No. 3:21-CV-0037, 2022 WL 2105853, at *8 (N.D.N.Y. June 10, 2022). Unlike in *Lisa C.*, however, the ALJ in this case did not explicitly account for plaintiff's purported limitations due to her Crohn's disease with any specific allowances for her to access a restroom. Of greater distinction is that the ALJ here did not provide any meaningful explanation for his consideration of plaintiff's symptoms and the limitations posed by plaintiff's treating sources, or show how her limitations were addressed by his RFC for modified light work.

For these reasons, the Court will remand this matter to allow the ALJ to more fully explain the supportability and consistency factors as related to Dr. Dean and Dr. Calkins' opinions, as well as the more recent opinion submitted by Dr. Oh. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020)("If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required."), *report-recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Nicole L. v. Kijakazi*, No. 20-CV-1576, 2022 WL 160274, at *8-9 (N.D.N.Y. Jan. 18, 2022)(noting that supportability includes an assessment of whether both relevant objective evidence and supporting explanations provided by the source

support his or her opinion, and finding error where the ALJ "did not provide any explicit analysis of its supportability" as to one opinion).

**WHEREFORE,** based on the findings above, it is

**ORDERED, t**hat the decision of the Commissioner be **REVERSED** and this case **REMANDED,** pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED,** that the Clerk enter judgment for **PLAINTIFF**.

Dated: April 21, 2023

Andrew T. Baxter
U.S. Magistrate Judge